IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-10-96 |
| | § | CIVIL ACTION NO. H-11-2744 |
| J. JESUS ALVAREZ LARA, | § | |
| | § | |
| Defendant-Movant | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C.

§2255 is Movant J. Jesus Alvarez Lara's §2255 Motion to Vacate, Set Aside or Correct Sentence

(Document No. 50),[1]), the United States' Response and Motion to Dismiss Movant's §2255 Motion

(Document No. 52, 53), and Movant's Response to the United States' Motion to Dismiss § 2255

Motion (Document No. 54). After reviewing Movant's §2255 Motion, the Government's Response

and Motion to Dismiss, Movant's Response to the Government's Motion to Dismiss, the record of

the proceedings before the District Court in the underlying criminal case and on appeal, and the

applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that the

Government's Motion to Dismiss (Document No. 53) be GRANTED, and that Movant J. Jesus

Alvarez Lara's §2255 Motion (Document No. 50) be DENIED.

## I.    Procedural History

Movant J. Jesus Alvarez Lara ("Lara"), who is currently in the custody of the United States

---

[1] J. Jesus Alvarez Lara's Motion to Vacate, Set Aside or Correct Sentence can be found at
Document No. 1 in Civil Action H-11-2744 and at Document No. 50 in Criminal Action No. H-
10-96.

Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C. §2255.  This is Lara's first attempt at §2255 relief.

On February 24, 2010, Lara was charged by Indictment with illegal reentry by a previously deported alien after an aggravated felony conviction in violation of 8 U.S.C. §1326(a) and (b)(1). (Document No. 1).  On April 9, 2010, Lara pleaded guilty, without a written plea agreement, to the Indictment.

Prior to sentencing, a pre-sentence investigation report ("PSR") was prepared to which Lara filed written objections.  (Document Nos.19, 20, 22, 24, 27).  Lara objected to his second conviction for drug possession being characterized as an aggravated felony, which under U.S.S.G. §2L1.2(b)(1)(C) resulted in an eight level enhancement of his base offense level.  Lara argued that the Fifth Circuit decision that had been relied on to support the eight level enhancement had been reversed by the United States Supreme Court in *Carachuri-Rosendo v. Holder*, 130 S.Ct.  2577 (2010).  According to Lara, because he had not been convicted of an aggravated felony but only simple felonies, his base offense level should have been increased by four levels not eight levels. The Probation Office agreed with Lara's objection and filed an Addendum to the PSR.  Pursuant to the Addendum, Lara had a base offense level of 8 under U.S.S.G. §2L1.2(a).  Lara's base offense level was increased by four levels pursuant to U.S.S.G. §2L1.2(b)(1)(D).  Because Lara accepted responsibility for his activities, his offense level was reduced by two levels.  With an offense level of 10, and a criminal history category of VI, Lara had an advisory guideline sentencing range of 24 to 30 months.

Lara was sentenced on July 16, 2010.  The Government argued for a sentence at the high end of the advisory guideline range, or in the alternative, for a departure under 18 U.S.C. §3553(a)

because of his lengthy criminal history and concern for public safety.  In contrast, Lara's counsel

argued for a sentence at the low end of the advisory guideline sentencing range.

> Mr.  Gallagher: Yes, Your Honor.  Thank you.  I'd urge the Court to impose a sentence at the low end of the guidelines in this matter.  One, as I'm sure you noticed, Mr. — I do ask the Court to take into account Mr.  Alvarez has spent about six weeks in Immigration custody prior to coming to custody of the Marshals, as reflected on the first page of the PSR.
>
> The PSR reflects a number of convictions, as well as arrests which did not lead in conviction (sic).  I do want to point out the timing on those.  More than half of his criminal history points in almost all of those arrests are from more than ten years ago.  And Mr.  Alvarez' conduct has changed dramatically from the 1990s to 2000.  And, for instance, the Court, the PSR applied (sic) found that he had about 13 criminal history points, and only five of those were from the past ten years.  The others are from longer ago than that because he admits being in the country for some period of time.  His older convictions count.  But, nonetheless, I'd urge the Court to impose a sentence at the low end in light of his diminished criminal conduct in the past decade.  He's only been deported once, and he is — he is a 50-year old man, and that maturity has come about his – the dampening down of his arrest and arrest of the police (sic).
>
> The Court: When he was found in the United States, he was in custody; correct?
>
> Mr.  Gallagher: Yes, Your Honor.  Yes, Your honor.
>
> The Court: What was he charged with?
>
> Mr.  Gallagher: It was endangering a child, Your Honor, to which he received 120 days in jail.  The PSR describes that he had ---
>
> The Court: A child on a bicycle, or he was holding a child while riding a bicycle while intoxicated.
>
> Mr.  Gallagher: Exactly, Your Honor.  Exactly.  Right.  And, like I said, he gets points for those, and then another conviction in 2009 and 2004.  But all of those before that, all of the other things he gets points for are from 1994 and earlier, which is what puts him up in Category 6.
>
> So in light of the timing and age of some of these convictions, I'd urge the Court to impose a sentence in the low end of the guidelines in this matter.
>
> The Court: Mr.  Smith?

Mr. Smith: Your Honor, I'm going to ask for the exact opposite, something on the high end. And if the Court were inclined to go outside of the guidelines, I think that it would be appropriate in this case based upon 18 USC §3553A, and here is why. I take a totally different look, as far as Mr. Lara's criminal history in the 90's, and even going into the 2000s, he had at least 11 unadjudicated public intoxicated arrests (sic). Some of them we don't know what happened with those. This most recent arrest for riding a bicycle holding a child, because you need to go get some more beers and you're intoxicated with a child on a bike with a ten-month old child is totally in line with a public intoxication arrest, the 11 that he had and we don't even know what happened with those.

With a person that has this issue in their lives or life with drinking alcohol and not being allowed to drink that, my concern is public safety. And in the event he comes back and he decides to get on another bike or get behind the wheel of a car and drive and drink, the consequences could be potentially disastrous. And I think, looking at the totality of his criminal history, I think the Court can take into account if he were to come back, deterrence, what is in the interest of public safety, his criminal history. Although he doesn't have a very extensive deportation history, I think that his criminal history speaks for itself, and that's, in essence, a clear window, as far as what he would do if he were to come back to the United States.

Therefore, I would ask for a sentence at the top end of the guidelines of 30 months. And I rest.

The Court: Do you want to respond to that?

Mr. Gallagher: Well, briefly, I do want— obviously, Mr. Alvarez has an issue with alcohol which was most severe in the '90s. I do want to emphasize the prosecutor raises the issue of drunk driving. That — the only indication I see of that is from 1988. And while he obviously has public intoxication issues since then, the use of a car I don't see suggested. He has driven, but he has not been charged with any drunk driving offenses, even as a charge, much less as a conviction, for more than 20 years. So I think the drunk driving concern is overstated.

He is someone who obviously has had an alcohol problem throughout his life, and it likely persists. With that said, as I said, his has a somewhat limited deportation history. He's been deported only once. He's going to serve a substantial period of time in jail now, regardless of whether the Court follows my recommendation or the prosecution's recommendation. And we've discussed, he understands he cannot come back to the United States, and this will deter him from coming back to the interest of the United States (sic). And further deterrence of misconduct upon expecting his return is diminished, Your Honor.

4

> The Court: Mr. Lara, is there anything you'd like to say before I pronounce sentence?
>
> The Defendant: The only thing I can say about alcohol is I never had a father or mother to guide me. I grew up on the streets, and when I arrived here I just drank and I did drugs. And I worked all the time. I've always worked. I've never assaulted anyone, I've never taken anything from anyone. I work. I work to survive. I work to live. I'm an upholsterer, and that's what I work as. I learned to do that kind of work here, and that's my job. That's it. (Document No. 39, pp. 5-9).

On July 16, 2010, Lara was sentenced to a term of imprisonment of 46 months, to be followed by a 3 year term of supervised release. (Document No. 28, Transcript of Sentencing Hearing, Document No. 39, p 12). Judgment was entered on July 27, 2010. (Document No. 30). With respect to Lara's sentence, Judge Harmon stated:

> J. Jesus Alvarez is before the Court for sentencing after entering a plea of guilty to one count involving illegal reentry by a previously deported alien after a felony conviction. He has previously been deported at least one time without prosecution. He accepts responsibility for the offense and he expressed remorse for having engaged in continued illegal activity. He has a history of illegal entry and reentry into the United States, as well as extensive criminal history which includes possession of marijuana, driving while intoxicated, driving while his license is suspended, disorderly conduct, theft by check, resisting arrest, possession of a controlled substance, criminal mischief, theft and endangering a child.
>
> I don't hear that — I don't hear from him any kind of indication that he won't continue this drinking, that obviously it is the problem. The problem is causing virtually all his criminal activities. I don't believe that he's — I believe there's a very, very high chance of his reentering the United States again. His family is here and it's just very troubling. I really feel sorry for him, Mr. Lara. I think it's a very sad case. This particular conviction by my math is 17, criminal convictions.
>
> I have considered Part E, factors that may warrant departure, Part E of the presentece report, and I believe that Mr. Lara's criminal history category substantially under represents the seriousness of his criminal history and the likelihood that he will commit other crimes. I reached this conclusion upon consideration of the nature and to the extent of his past criminal conduct.
>
> His conduct has demonstrated a disregard and indifference to others and law enforcement. No sanction has had any impact on deterring him from this criminal

5

lifestyle, and it's therefore unlikely he would be deterred in the future without a more serious punishment than that previously imposed for prior crimes.

Pursuant to the United States Sentencing Guidelines Section A — I'm sorry— Section 4A1.3a(A)(4)(A), the Court will add, moving down the sentencing table, I'm going to add a total of four offense levels, making his total offense level 14. And, of course, his criminal history category remains a 6. I believe that this is a more appropriate offense level in this case. And the guideline imprisonment range would therefore be 37 to 46 months.

I believe that a sentence at the high end of that range is warranted due to the likelihood of his committing future crimes. I've considered the guidelines and find that a sentence within those, while I departed from the guidelines incrementally along the table and find a sentence within the new guidelines is consistent with and takes into account the purposes of 18 United States Code Section 3585A. And his sentence will address specifically the goals of punishment, the protection of the public and deterrence, and is sufficient and necessary but not greater than necessary to comply with the purposes of the statutory sentencing framework of the provisions of 18 United States Code Section 3585A. (Document No. 39, p. 9-11).

Lara appealed his sentence to the Fifth Circuit Court of Appeals. (Document No.36). The

Fifth Circuit affirmed the Court's upward departure of Lara's sentence. (Document No. 47, 48).

The Fifth Circuit wrote:

J. Jesus Alvarez Lara (Alvarez) pleaded guilty to illegal reentry by a previously deported alien and was sentenced to 46 months of imprisonment and three years of supervised release. He now appeals his sentence, which was based on a upward departure under U.S.S.G. §4A1.3, arguing that the facts did not warrant an upward departure and that the sentence was greater than necessary to achieve the goals of 18 U.S.C. §3553(a).

We review Alvarez's sentence for reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). Reasonableness review, in the context of a guidelines departure, requires this court to evaluate both the decision to depart upward and the extent of the departure for an abuse of discretion. *United States v. Zuniga-Peralta*, 442 F.3d 345, 347 (5th Cir. 2006). An upward departure is not an abuse of discretion if the reasons for the departure advance the objectives of §3553(a) and are justified by the particular facts of the case. *Id.*

Given Alvarez's extensive criminal record and the lack of deterrent effect from prior

lenient sentences, the district court did not abuse its discretion by upwardly departing based upon its finding that Alvarez's criminal history under-represented the seriousness of his criminal history and the likelihood that he would recidivate. *See* §3553(a); *Zuniga-Peralta*, 442 F.3d at 347; *United States v. Brantley*, 537 F.3d 347, 349-50 (5ᵗʰ Cir. 2008); *United States v. Simkanin*.420 F.3d 397, 418 n. 24 (5ᵗʰ Cir. 2005); *United States v. Pennington*, 9 F.3d 1116, 1118 (5ᵗʰ Cir. 1993). Additionally, Alvarez has not shown that the district court erred in determining the extent of the departure. *See Gall*, 552 U.S. at 51; *Zuniga-Peralta*, 442 F.3d at 347-48. Following the direction of §4A1.3(a)(4)(B), because Alvarez was already in the highest criminal history category, the district court moved incrementally down the Sentencing Table from a total offense level of ten to an offense level of 14; a total offense level of 14 with a criminal history category of VI yielded a new advisory sentencing guidelines range of 37 to 46 months imprisonment. *See* U.S.S.G. Ch. 5, Pt. A, Sentencing Table. The district court determined that 46 months was the most appropriate and reasonable sentence for Alvarez. This 46-month sentence was 16 months greater than the high-end of the guidelines sentence range applicable without the upward departure. *See* U.S.S.G. Ch. 5, Pt. A, Sentencing Table. This court has affirmed similar and more substantial departures. *See Zuniga-Peralta*, 442 F.3d at 346-48; *United States v. Lee*, 358 F.3d 315, 328-29 (5ᵗʰ Cir. 2004); *United States v. McKenzie*, 991 F.2d 203, 205 n. 7, 206 n. 8 (5ᵗʰ Cir. 1993). (Document No. 48).

## II. Discussion

Within one year of his conviction being final, Lara timely filed a §2255 Motion to Vacate, Set Aside, or Correct Sentence (Document No. 50). Lara challenges the upward departure imposed at sentencing. He also raises claims of ineffective assistance of counsel. According to Lara, his counsel was constitutionally ineffective for failing to argue that Lara had not been convicted of any aggravated offenses that would have denied him lawful entry into the United States. Lara suggests that counsel could have and should have relied on *Carachuri-Rosendo v. Holder*, 130 S.Ct. 2577 (2010) and argued that "Mr. Lara in accordance with Supreme Court and Fifth Circuit precedence was defined as part of "the people" who has come to the United States voluntarily and accepted some societal obligations" (Document No. 54) and argue that his criminal history was the equivalent of a misdemeanor offense and that his sentence should not have been enhanced. Lara also argues that

7

counsel failed to object to his criminal history and failed to argue at sentencing that his criminal history was related to his alcohol use.

The Government, in its Motion to Dismiss (Document No. 53) argues that Lara's §2255 Motion to Vacate, Set Aside or Correct Sentence should be dismissed because Lara is not entitled to relief.   According to the Government, Lara cannot challenge the Court's application of the sentencing guidelines in a §2255 proceeding, and further argues that even assuming that such a claim was cognizable, the issue was raised in his direct appeal.   As to Lara's ineffective assistance of claims, the Government argues that Lara has not shown that his counsel was deficient nor has he shown he was prejudiced.

Lara was sentenced to a term of imprisonment of 46 months.   He had an advisory guideline range of 24 to 30 months but the Court departed upward by 16 months under U.S.S.G. §4A1.3(a)(1). Lara challenges his sentence, which he contends is too severe because the majority of his prior convictions resulted from his problems with alcohol abuse.   The law is clear that alleged misapplications of the Sentencing Guidelines are not cognizable in a §2255 motion.   *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).   In addition, even assuming that Lara could pursue such a claim in a §2255 proceeding, "issues raised and disposed of in a previous appeal from a judgment of conviction are not considered."   *United States v.  Kalish*, 780 F.2d 506, 508 (5th Cir. ), *cert.  denied*, 476 U.S. 1118 (1986); *United States v.  Rocha*, 109 F.3d 225, 229 (5th Cir.  1997). Lara appealed his sentence to the Fifth Circuit Court of Appeals.   The Fifth Circuit found that the Court had not abused its discretion by upwardly departing.   Given the Fifth Circuit's determination, Lara cannot re-litigate this claim through his §2255 motion.

Claims of ineffective assistance of counsel are generally measured by the standard of

8

*Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must be able to show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Strickland*, 466 U.S. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id*. at 687-88. The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable. *Id*. at 694-95. Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief. The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

Under the deficiency prong of *Strickland*, judicial scrutiny of counsel's performance is "highly deferential" and "a strong presumption" is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1064-65 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993) (citing *Strickland*). To overcome the presumption of competence, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland,* a petitioner must be able to establish that absent his counsel's deficient performance, the result of his trial could have been different. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination of whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in light of the number, nature, and seriousness of

the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied,* 467 U.S. 1220 (1984). The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland,* 466 U.S. at 690. "We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)). Conclusory allegations of ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition. *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir. 1983)).

The United States Supreme Court in *Harrington v. Richter*, ___U.S.___, 131 S.Ct. 770, 778 (2011) recently discussed *Strickland* in the context of a habeas proceeding involving a state conviction. While *Harrington* did not involve a federal habeas proceeding involving a federal conviction, the Court's discussion of *Strickland* and ineffective assistance of counsel claims is instructive and equally applies to claims brought in a federal habeas proceeding such as those raised herein.

With respect to ineffective assistance of counsel claims, the Court observed that "[t]here are, [ ] 'countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.' Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach." *Id.* at 788-89 (quoting from *Strickland*, 466 U.S. at 689). As a result, counsel's performance does not fall below that guaranteed by the Sixth Amendment where it can be shown that

10

counsel formulated a strategy that was reasonable at the time and balanced limited resources with effective trial tactics and strategies. *Harrington*, 131 S.Ct. at 789. "Just as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Harrington*, 131 S.Ct. at 791. Moreover, "it is difficult to establish ineffective assistance when counsel's *overall* performance indicates active and capable advocacy." *Harrington*, 131 S.Ct. at 791 (emphasis added). Finally, in considering the prejudice prong of *Strickland*, the likelihood of a different result must be substantial, not just conceivable. *Id.* at 791-792 (Citations omitted). As a result, "'[s]urmounting *Strickland's* high bar is never an easy task.'" (quoting from *Padilla v. Kentucky*, 559 U.S. ___, ___, 130 S.Ct. 1473, 1485 (2010)). In part, because:

> Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.

*Harrington*, 131 S.Ct. at 778 (citations omitted).

As to the specific examples of ineffective assistance of counsel which Lara cites to in support of his ineffectiveness claim, such as that counsel could have and should have argued the applicability of *Carachuri-Rosendo v. Holder*, 130 S.Ct. 2577 (2010), the record shows that counsel relied on this holding in the written objections that were filed. (Document No. 19). The record further shows that based on Lara's objections to the PSR, the PSR was amended to reflect that Lara had not been convicted of an aggravated felony but only simple felonies and as a result, a four level enhancement applied and not an eight level enhancement. This lowered Lara's advisory sentencing guideline

11

range from 33 to 44 months to 24 to 30 months.  Given that counsel made the arguments suggested by Lara, he has not shown that any alleged error prejudiced him within the meaning of *Strickland*.

Lara also argues that counsel failed to object to his PSR on the ground that his prior convictions used to determine his criminal history were "counseled convictions."  The PSR suggests that with respect to Lara's prior criminal convictions, he either was represented by counsel or had waived his right to counsel. *See Clark v.  Collins*, 19 F.3d 959, 966 (5th Cir.  1984) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); *United States v.  Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").  As to Lara's contention that counsel failed to argue that his criminal history was absent any serious offenses and for the most part was a result of alcohol abuse, the record shows that counsel argued this at the Sentencing Hearing. (Transcript of Sentencing Hearing, Document No. 39, p.  5-6, 8-9). Counsel argued that Lara should be sentenced at the low end of the advisory guideline range.  In conclusion, Lara has offered no proof of how counsel's performance was objectively deficient, and no proof that such deficient performance prejudiced him in any way.  *See Strickland*, 466 U.S. at 687.

### III.  Conclusion and Recommendation

Based on the foregoing, it is

RECOMMENDED that the Government's Motion to Dismiss Movant's §2255 Motion (Document No.  53) be GRANTED, and that Movant J. Jesus Alvarez Lara's §2255 Motion to Vacate, Set Aside or Correct Sentence (Document No.  50) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented

parties of record.   Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. §636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas.   Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).   Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal.   *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).   The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 29th  day of March, 2012.


Frances H. Stacy
United States Magistrate Judge

13